James F. McCarthy III (0002245)
Trial Attorney for Plaintiff

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| COHEN BROTHERS, INC., et al. | : | **Case No. A1201581** |
| Plaintiffs, | : | (Judge Robert C. Winkler) |
| v. | : | **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND MONETARY DAMAGES** |
| CITY OF CINCINNATI | : | |
| Defendant. | : | |

For their Amended Complaint against Defendant City of Cincinnati ("City"), Plaintiffs Cohen Brothers, Inc. ("Cohen Brothers") and American Compressed Steel Corp. ("American Compressed") (jointly Cohen Brothers and American Compressed are the "Plaintiffs") state and aver as follows:

1.      Cohen Brothers and American Compressed are each a scrap metal dealer within the meaning of Chapter 4737, Ohio Revised Code.  Cohen Brothers and American Compressed have each successfully operated scrap metal processing facilities in the State of Ohio and the City of Cincinnati.

2.      The City is a municipality organized and existing under the laws of the State of Ohio.

3.      On February 15, 2012, the City passed Ordinance No. 30-2012 modifying and amending the provisions of Chapter 843, "Junk Dealers and Second Hand Dealers," of the Cincinnati Municipal Code (hereinafter the "Ordinance").  A copy of the Ordinance is attached as Exhibit A to the Complaint.

1


EXHIBIT
A

4.    The Ordinance requires scrap metal purchasers, like Cohen Brothers and American Compressed, to obtain a license from the city manager or the city manager's designee to act as a scrap metal purchaser.

5.    The Ordinance requires scrap metal purchasers to engage in additional burdensome recordkeeping in the purchase and sale of scrap metal.

6.    The Ordinance requires that scrap metal purchasers report a record of transactions to the city police daily.

7.    The Ordinance requires any individual that wants to sell or barter any amount of nonferrous metal to a scrap metal purchase in the City of Cincinnati to obtain a license from the city manager or the city manager's designee to act as a scrap metal vendor.

8.    The Ordinance requires that scrap metal purchasers only buy from persons that have licenses as a scrap metal vendor.

9.    The Ordinance sets forth special rules for the purchase of special purchase articles.

10.    The Ordinance requires scrap metal purchasers and processors to purchase all scrap metal with a non-transferrable check and withhold payment for the purchase of scrap metal for a period of two days.

11.    The Ordinance is an exercise of the police power of the City, not an exercise of local self-government.

12.    Section 3, Article XVIII, the Home Rule Amendment to the Ohio Constitution authorizes municipalities to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.  However, it is a fundamental principal of Ohio law that a

municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern.

13. With the adoption of the Ordinance the City has enacted regulations in direct conflict with the general law of the State of Ohio.

14. The State of Ohio has adopted statewide, comprehensive legislation applying to all parts of the state and operating uniformly throughout the state, setting forth regulations prescribing a rule of conduct for scrap metal processing facilities. The statewide comprehensive regulations are set forth in Chapter 4737, Ohio Revised Code.

15. The Ohio General Assembly has adopted Senate Bill No. 171 effective September 11, 2008. Senate Bill No. 171 enacts a statewide comprehensive legislative regulation, applying to all parts of the state alike and operating uniformly throughout the state, prescribing regulations for scrap metal processing facilities.

16. Senate Bill No. 171 also expresses the legislature's intent to preempt local regulation of dealers in scrap metal.

17. Senate Bill No. 171 enacts a sweeping statewide regulation preempting the City's exercise of its police powers to regulate scrap metal dealers and recycling facilities.

18. The Ohio General Assembly has adopted Senate Bill No. 193 effective July 2, 2012. Senate Bill 193 supplements, amends and expands the statewide comprehensive legislative regulation of scrap metal transactions and scrap metal processing facilities throughout the State of Ohio. A true and accurate copy of Senate Bill No. 193 is attached as Exhibit 1 and incorporated by reference.

19. Senate Bill No. 193 was drafted through the collaborative efforts of Homeland Security, the Bureau of Criminal Investigation and Identification, local law enforcement,

3

railroads, public utilities, the Ohio Farm Bureau, and scrap metal processors.  As a result of that collaborative effort, Senate Bill No. 193 expanded the list of special purchase articles, prohibited any person from engaging in the business of scrap metal processing without first registering with the Director of Public Safety, introduced a statewide electronic registry of daily transactions in scrap metal and required scrap metal dealers to prepare a daily electronic report listing all retail transactions that occurred during the preceding day to be reported to the Director of Public Safety.

20.    With the adoption of Senate Bill No. 193, the General Assembly has confirmed that Chapter 4737 of the Ohio Revised Code is intended to promulgate a statewide comprehensive legislative regulation, applying to all parts of the state alike and operating uniformly throughout the state, prescribing regulations for scrap metal processing facilities.

21.    Such a comprehensive statewide regulation preempts the City's exercise of its police powers to regulate scrap metal dealers and recycling facilities.

22.    The Ordinance conflicts with this statewide comprehensive legislative enactment applied to all scrap metal processing facilities in Ohio and, therefore, is unconstitutional.

## COUNT I

23.    Plaintiffs incorporate by reference each and every averment set forth in paragraphs 1 through 22 of their Amended Complaint.

24.    The Ohio General Assembly has enacted statewide comprehensive legislation regulating the purchase and sale of scrap metal in Chapter 4737.

25.    Chapter 4737 provides for the registration of scrap metal processing facilities throughout the state of Ohio.

26.    Chapter 4737 provides record keeping requirements for scrap metal purchasers.

27.    Chapter 4737 provides special rules for special purchase articles.

4

28. Chapter 4737 provides rules regarding from whom scrap metal purchasers may purchase scrap metal.

29. Chapter 4737 provides rules regarding daily electronic reporting of retail transactions to the Director of Public Safety.

30. With the adoption and amendment of Chapter 4737, the Ohio General Assembly has intended to enact uniform and comprehensive regulations governing the purchase and sale of scrap metal and the operation of scrap metal processing facilities throughout the state of Ohio.

31. With the adoption of such a comprehensive legislative enactment, the State of Ohio has preempted the City from enacting any conflicting regulation concerning scrap metal processing facilities or the purchase or sale of scrap metal.

32. Despite the preemption, the City has enacted the Ordinance, an exercise of its concurrent police power, to regulate businesses that process and recycle scrap metal or deal in the purchase and sale of scrap metal. The Ordinance imposes prohibitions and restrictions on activities which are permitted under state law. Therefore, the enactment of the Ordinance is in conflict with the general law of Ohio and is therefore unconstitutional.

33. As a result of its enactment of the Ordinance, a real and justifiable controversy now exists between Plaintiffs and the City.

34. The Court, therefore, should declare the Ordinance unconstitutional because it has been preempted by current statewide comprehensive legislative enactment of the Ohio General Assembly.

35. Plaintiffs have no adequate remedy at law.

5

36.     Unless the Court restrains and enjoins the City from enforcing the Ordinance, Cohen Brothers and American Compressed will suffer irreparable harm for which each has no adequate remedy at law.

## COUNT II

37.     Plaintiffs incorporate by reference each and every averment set forth in paragraphs 1 through 36 of their Amended Complaint.

38.     The Ordinance bears no reasonable relationship to the health, safety, morals or general welfare of the citizens of Cincinnati.

39.     The Ordinance imposes arbitrary, discriminatory, capricious and unreasonable restrictions on Cohen Brothers and American Compressed.

40.     The Ordinance is overbroad in scope and imposes arbitrary, discriminatory, capricious, and unreasonable restrictions and licensure requirements on all potential sellers of scrap metal and will cause a substantial reduction in the supply of scrap metal to Cohen Brothers and American Compressed.

41.     The Court, therefore, should declare the Ordinance an unconstitutional exercise of the police power granted to municipalities in Section 3, Article XVIII Ohio Constitution.

42.     Plaintiffs have no adequate remedy of law.

43.     Unless the Court restrains and enjoins the City from enforcing the Ordinance, Cohen Brothers and American Compressed will suffer irreparable harm for which each has no adequate remedy of law.

## COUNT III

44.     Plaintiffs incorporate by reference each and every averment set forth in paragraphs 1 through 43 of their Amended Complaint.

6

45. The Ordinance is unconstitutional, illegal, invalid, discriminatory, confiscatory and unreasonable because it unreasonably restricts Cohen Brothers' and American Compressed's property thereby destroying the greater part of its value, imposing unnecessary, and unreasonable hardship on Cohen Brothers and American Compressed.

46. The Ordinance violates the Constitution of the State of Ohio, which forbids the passage of any laws depriving any person of property without due process of law.

47. The Court, therefore, should declare the Ordinance unconstitutional because it is illegal, invalid, discriminatory, confiscatory and unreasonable.

48. Cohen Brothers and American Compressed have no adequate remedy of law.

49. Unless the Court restrains and enjoins the City from enforcing the Ordinance, Cohen Brothers and American Compressed will suffer irreparable harm for which each has no adequate remedy at law.

## COUNT IV

50. Plaintiffs incorporate by reference each and every averment set forth in paragraphs 1 through 49 of their Amended Complaint.

51. The Ordinance is unconstitutional, illegal, invalid, discriminatory, confiscatory, and unreasonable because it unreasonably restricts Cohen Brothers' and American Compressed's property thereby destroying the greater part of its value, imposing unnecessary and unreasonable hardship on Cohen Brothers and American Compressed.

52. The Ordinance is overbroad in scope and poses arbitrary, discriminatory, capricious, and unreasonable restrictions and license requirements on all potential sellers of scrap metal, thereby deterring the sale of scrap metal which will cause a substantial reduction of the supply of scrap metal to Cohen Brothers and American Compressed, thereby resulting in the

impairment of their investment backed expectations and destroying the business and property of Cohen Brothers and American Compressed.

53.   The Ordinance is overbroad in scope and imposes arbitrary, discriminatory, capricious, and unreasonable restrictions on the sale of scrap metal, including delaying the payment for such scrap metal for two days and requiring payment exclusively with a non-transferable check which will cause a substantial reduction of the supply of scrap metal to Cohen Brothers and American Compressed, thereby resulting in the impairment of their investment backed expectations and destroying the business and property of Cohen Brothers and American Compressed.

54.   The Ordinance constitutes an unlawful taking of Cohen Brothers' and American Compressed's property rights without due process of law in violation of the United States Constitution and the Ohio Constitution.

55.   The Court, therefore, should declare the Ordinance unconstitutional because it is illegal, invalid, discriminatory, confiscatory, and unreasonable.

56.   Unless the Ordinance is restrained by this honorable Court, Cohen Brothers and American Compressed will suffer an irreparable harm for which each has no adequate remedy at law.

<u>**COUNT V**</u>

57.   Plaintiffs incorporate by reference each and every averment set out in paragraphs 1 through 56 of their Amended Complaint.

58.   Cohen Brothers acquired and developed the property located on Kellogg Avenue in the City of Cincinnati for the purpose of operating a scrap metal processing facility.

59.   Cohen Brothers complied with and obtained all licenses required under the zoning

8

code and building code of the City to open the facility as a scrap metal processing facility.

60. At the request of City Council, Cohen Brothers waived flood insurance coverage in order to secure City approval to open the scrap metal processing facility on Kellogg Avenue.

61. Cohen Brothers invested more than $3.2 million in the development of the Kellogg Avenue property for purposes of operating a scrap metal processing facility.

62. The City encouraged Cohen Brothers to open the scrap metal processing facility at the Kellogg Avenue location. The City knew and had reason to know of the substantial investment Cohen Brothers made to open a scrap metal processing facility on Kellogg Avenue. Despite its knowledge of the substantial investment Cohen Brothers made in the Kellogg Avenue property, the City enacted the Ordinance with the intent to deprive Cohen Brothers of their property and to impair its investment backed expectation and destroying the business and property of Cohen Brothers.

63. The Ordinance constitutes an unlawful taking of Cohen Brothers' property rights without due process of law in violation of the United States Constitution and the Ohio Constitution.

64. The Court, therefore, should declare the Ordinance unconstitutional because it is illegal, invalid, discriminatory, confiscatory, and unreasonable.

65. Unless the Ordinance is restrained by this honorable Court, Cohen Brothers will suffer irreparable harm for which it has no adequate remedy at law.

## COUNT VI

66. Plaintiffs incorporate by reference each and every averment set out in paragraphs 1 through 65 of their Amended Complaint.

67. Acting under color of law, the City has adopted a custom, policy and practice of

9

restraining and impairing legitimate business operations and property rights without due process of law.

68.     As a direct and proximate result of the City's custom, policy and practice, Cohen Brothers and American Compressed Steel have been denied their civil rights guaranteed under the United States Constitution, the laws of the United States, the Ohio Constitution and the laws of the State of Ohio.

69.     The City's custom, policy and practice is a violation of 42 U.S.C. §1983.

70.     Unless the custom, policy and practice of the City to deprive legitimate business operations of their civil rights is restrained by this honorable Court, Cohen Brothers and American Compressed Steel will suffer irreparable harm for which they have no adequate remedy at law.

71.     Unless the custom, policy and practice of the City is enjoined, the Ordinance will result in the closure of Cohen Brothers' and American Compressed Steel's business and the unlawful taking of their business and the frustration of their investment backed expectations.

72.     As a direct and proximate result of denial of their civil rights, Cohen Brothers and American Compressed have suffered damages in an amount in excess of $100,000.00.

## COUNT VII

73.     Plaintiffs incorporate by reference each and every averment set forth in paragraphs 1 through 72 of their Amended Complaint.

74.     The United States Constitution vests in the Congress of the United States the final authority to dictate what can be legal tender for the payment of debts. Article I, §8, cl. 5, U.S. Constitution.

75.     Under federal statute, all coins and currencies of the United States (including

10

Federal Reserve notes and circulating notes of Federal Reserve banks and national banks), regardless of when coined or issued, are legal tender for all debts, public charges, taxes and dues. 31 U.S.C. §5103.

76. In violation of this federal statute, the City precludes payment in the form of U.S. currency (i.e. cash) and bans the use of currency in scrap metal transactions.

77. As a direct and proximate result of the ban on currency, the Ordinance deters the sale of scrap metal which will cause a substantial reduction of the supply of scrap metal to Cohen Brothers and American Compressed, thereby resulting in the further impairment of their investment backed expectations, destroying the business and property of Cohen Brothers and American Compressed and resulting in the taking of their business and property.

78. The Court, should declare the Ordinance unconstitutional.

79. Cohen Brothers and American Compressed have no adequate remedy at law.

80. Unless the Court restrains and enjoins the City from enforcing the Ordinance, Cohen Brothers and American Compressed will suffer irreparable harm for which each has no adequate remedy at law.

WHEREFORE, Cohen Brothers and American Compressed request that the Court enter judgment:

1. Declaring the Ordinance unconstitutional and void;

2. Enjoining and restraining the City, its mayor, members of council, and other officials, agents, directors, officers or employees with the responsibility of administering and enforcing the Ordinance and their successors in office, from enforcing the Ordinance and/or any similar restrictions on Cohen Brothers and American Compressed;

3. Awarding Cohen Brothers and American Compressed their damages;

11

4.    Awarding Cohen Brothers and American Compressed their costs and attorneys fees;

5.    Awarding Cohen Brothers and American Compressed punitive damages; and

6.    Awarding Cohen Brothers and American Compressed such other legal and equitable relief to which they are entitled.

Respectfully submitted,

/s/ James F. McCarthy, III
James F. McCarthy III (0002245)
Katz, Teller, Brant & Hild
255 East Fifth Street, Suite 2400
Cincinnati, Ohio 45202
Telephone:  (513) 721-4532
Facsimile:  (513) 762-0006

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing Amended

Complaint for Declaratory Judgment, Injunctive Relief and Monetary Damages has been served

via regular U.S. Mail this 17th day of October, 2012 upon the following:

Catherine E. Howard, Esq.
Assistant City Solicitors
801 Plum Street, Room 214
Cincinnati, OH 45202

/s/ James F. McCarthy, III
James F. McCarthy III (0002245)

KTBH: 4815-6678-2223, v. 1

EXHIBIT
A

(129th General Assembly)
(Amended Substitute Senate Bill Number 193)

# AN ACT

To amend sections 2913.01, 4737.04, 4737.041, and 4737.99
and to enact sections 4737.012 and 4737.045 of the
Revised Code to make changes to the law governing
scrap metal dealers and bulk merchandise dealers.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That sections 2913.01, 4737.04, 4737.041, and 4737.99 be amended and sections 4737.012 and 4737.045 of the Revised Code be enacted to read as follows:

Sec. 2913.01. As used in this chapter, unless the context requires that a term be given a different meaning:

(A) "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

(B) "Defraud" means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another.

(C) "Deprive" means to do any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

(D) "Owner" means, unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even

Am. Sub. S. B. No. 193                                              129th G.A.

2

though the ownership, possession, control, license, or interest is unlawful.

(E) "Services" include labor, personal services, professional services, rental services, public utility services including wireless service as defined in division (F)(1) of section 4931.40 of the Revised Code, common carrier services, and food, drink, transportation, entertainment, and cable television services and, for purposes of section 2913.04 of the Revised Code, include cable services as defined in that section.

(F) "Writing" means any computer software, document, letter, memorandum, note, paper, plate, data, film, or other thing having in or upon it any written, typewritten, or printed matter, and any token, stamp, seal, credit card, badge, trademark, label, or other symbol of value, right, privilege, license, or identification.

(G) "Forge" means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct.

(H) "Utter" means to issue, publish, transfer, use, put or send into circulation, deliver, or display.

(I) "Coin machine" means any mechanical or electronic device designed to do both of the following:

(1) Receive a coin, bill, or token made for that purpose;

(2) In return for the insertion or deposit of a coin, bill, or token, automatically dispense property, provide a service, or grant a license.

(J) "Slug" means an object that, by virtue of its size, shape, composition, or other quality, is capable of being inserted or deposited in a coin machine as an improper substitute for a genuine coin, bill, or token made for that purpose.

(K) "Theft offense" means any of the following:

(1) A violation of section 2911.01, 2911.02, 2911.11, 2911.12, 2911.13, 2911.31, 2911.32, 2913.02, 2913.03, 2913.04, 2913.041, 2913.05, 2913.06, 2913.11, 2913.21, 2913.31, 2913.32, 2913.33, 2913.34, 2913.40, 2913.42, 2913.43, 2913.44, 2913.45, 2913.47, 2913.48, former section 2913.47 or 2913.48, or section 2913.51, 2915.05, or 2921.41, or division (B)(2) of section 4737.04 of the Revised Code;

(2) A violation of an existing or former municipal ordinance or law of this or any other state, or of the United States, substantially equivalent to any section listed in division (K)(1) of this section or a violation of section 2913.41, 2913.81, or 2915.06 of the Revised Code as it existed prior to July 1, 1996;

(3) An offense under an existing or former municipal ordinance or law

Am. Sub. S. B. No. 193                                      129th G.A.

3

of this or any other state, or of the United States, involving robbery, burglary, breaking and entering, theft, embezzlement, wrongful conversion, forgery, counterfeiting, deceit, or fraud;

(4) A conspiracy or attempt to commit, or complicity in committing, any offense under division (K)(1), (2), or (3) of this section.

(L) "Computer services" includes, but is not limited to, the use of a computer system, computer network, computer program, data that is prepared for computer use, or data that is contained within a computer system or computer network.

(M) "Computer" means an electronic device that performs logical, arithmetic, and memory functions by the manipulation of electronic or magnetic impulses. "Computer" includes, but is not limited to, all input, output, processing, storage, computer program, or communication facilities that are connected, or related, in a computer system or network to an electronic device of that nature.

(N) "Computer system" means a computer and related devices, whether connected or unconnected, including, but not limited to, data input, output, and storage devices, data communications links, and computer programs and data that make the system capable of performing specified special purpose data processing tasks.

(O) "Computer network" means a set of related and remotely connected computers and communication facilities that includes more than one computer system that has the capability to transmit among the connected computers and communication facilities through the use of computer facilities.

(P) "Computer program" means an ordered set of data representing coded instructions or statements that, when executed by a computer, cause the computer to process data.

(Q) "Computer software" means computer programs, procedures, and other documentation associated with the operation of a computer system.

(R) "Data" means a representation of information, knowledge, facts, concepts, or instructions that are being or have been prepared in a formalized manner and that are intended for use in a computer, computer system, or computer network. For purposes of section 2913.47 of the Revised Code, "data" has the additional meaning set forth in division (A) of that section.

(S) "Cable television service" means any services provided by or through the facilities of any cable television system or other similar closed circuit coaxial cable communications system, or any microwave or similar transmission service used in connection with any cable television system or

Am. Sub. S. B. No. 193                                                129th G.A.

4

other similar closed circuit coaxial cable communications system.

(T) "Gain access" means to approach, instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, computer system, or computer network, or any cable service or cable system both as defined in section 2913.04 of the Revised Code.

(U) "Credit card" includes, but is not limited to, a card, code, device, or other means of access to a customer's account for the purpose of obtaining money, property, labor, or services on credit, or for initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine. It also includes a county procurement card issued under section 301.29 of the Revised Code.

(V) "Electronic fund transfer" has the same meaning as in 92 Stat. 3728, 15 U.S.C.A. 1693a, as amended.

(W) "Rented property" means personal property in which the right of possession and use of the property is for a short and possibly indeterminate term in return for consideration; the rentee generally controls the duration of possession of the property, within any applicable minimum or maximum term; and the amount of consideration generally is determined by the duration of possession of the property.

(X) "Telecommunication" means the origination, emission, dissemination, transmission, or reception of data, images, signals, sounds, or other intelligence or equivalence of intelligence of any nature over any communications system by any method, including, but not limited to, a fiber optic, electronic, magnetic, optical, digital, or analog method.

(Y) "Telecommunications device" means any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem.

(Z) "Telecommunications service" means the providing, allowing, facilitating, or generating of any form of telecommunication through the use of a telecommunications device over a telecommunications system.

(AA) "Counterfeit telecommunications device" means a telecommunications device that, alone or with another telecommunications device, has been altered, constructed, manufactured, or programmed to acquire, intercept, receive, or otherwise facilitate the use of a telecommunications service or information service without the authority or consent of the provider of the telecommunications service or information service. "Counterfeit telecommunications device" includes, but is not

Am. Sub. S. B. No. 193                                    129th G.A.

5

limited to, a clone telephone, clone microchip, tumbler telephone, or tumbler microchip; a wireless scanning device capable of acquiring, intercepting, receiving, or otherwise facilitating the use of telecommunications service or information service without immediate detection; or a device, equipment, hardware, or software designed for, or capable of, altering or changing the electronic serial number in a wireless telephone.

(BB)(1) "Information service" means, subject to division (BB)(2) of this section, the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications, including, but not limited to, electronic publishing.

(2) "Information service" does not include any use of a capability of a type described in division (BB)(1) of this section for the management, control, or operation of a telecommunications system or the management of a telecommunications service.

(CC) "Elderly person" means a person who is sixty-five years of age or older.

(DD) "Disabled adult" means a person who is eighteen years of age or older and has some impairment of body or mind that makes the person unable to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue for a period of at least twelve months without any present indication of recovery from the impairment, or who is eighteen years of age or older and has been certified as permanently and totally disabled by an agency of this state or the United States that has the function of so classifying persons.

(EE) "Firearm" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.

(FF) "Motor vehicle" has the same meaning as in section 4501.01 of the Revised Code.

(GG) "Dangerous drug" has the same meaning as in section 4729.01 of the Revised Code.

(HH) "Drug abuse offense" has the same meaning as in section 2925.01 of the Revised Code.

(II)(1) "Computer hacking" means any of the following:

(a) Gaining access or attempting to gain access to all or part of a computer, computer system, or a computer network without express or implied authorization with the intent to defraud or with intent to commit a crime;

Am. Sub. S. B. No. 193                                   129th G.A.

6

(b) Misusing computer or network services including, but not limited to, mail transfer programs, file transfer programs, proxy servers, and web servers by performing functions not authorized by the owner of the computer, computer system, or computer network or other person authorized to give consent. As used in this division, "misuse of computer and network services" includes, but is not limited to, the unauthorized use of any of the following:

(i) Mail transfer programs to send mail to persons other than the authorized users of that computer or computer network;

(ii) File transfer program proxy services or proxy servers to access other computers, computer systems, or computer networks;

(iii) Web servers to redirect users to other web pages or web servers.

(c)(i) Subject to division (II)(1)(c)(ii) of this section, using a group of computer programs commonly known as "port scanners" or "probes" to intentionally access any computer, computer system, or computer network without the permission of the owner of the computer, computer system, or computer network or other person authorized to give consent. The group of computer programs referred to in this division includes, but is not limited to, those computer programs that use a computer network to access a computer, computer system, or another computer network to determine any of the following: the presence or types of computers or computer systems on a network; the computer network's facilities and capabilities; the availability of computer or network services; the presence or versions of computer software including, but not limited to, operating systems, computer services, or computer contaminants; the presence of a known computer software deficiency that can be used to gain unauthorized access to a computer, computer system, or computer network; or any other information about a computer, computer system, or computer network not necessary for the normal and lawful operation of the computer initiating the access.

(ii) The group of computer programs referred to in division (II)(1)(c)(i) of this section does not include standard computer software used for the normal operation, administration, management, and test of a computer, computer system, or computer network including, but not limited to, domain name services, mail transfer services, and other operating system services, computer programs commonly called "ping," "tcpdump," and "traceroute" and other network monitoring and management computer software, and computer programs commonly known as "nslookup" and "whois" and other systems administration computer software.

(d) The intentional use of a computer, computer system, or a computer network in a manner that exceeds any right or permission granted by the

Am. Sub. S. B. No. 193                                         129th G.A.

7

owner of the computer, computer system, or computer network or other person authorized to give consent.

(2) "Computer hacking" does not include the introduction of a computer contaminant, as defined in section 2909.01 of the Revised Code, into a computer, computer system, computer program, or computer network.

(JJ) "Police dog or horse" has the same meaning as in section 2921.321 of the Revised Code.

(KK) "Anhydrous ammonia" is a compound formed by the combination of two gaseous elements, nitrogen and hydrogen, in the manner described in this division. Anhydrous ammonia is one part nitrogen to three parts hydrogen (NH3). Anhydrous ammonia by weight is fourteen parts nitrogen to three parts hydrogen, which is approximately eighty-two per cent nitrogen to eighteen per cent hydrogen.

(LL) "Assistance dog" has the same meaning as in section 955.011 of the Revised Code.

(MM) "Federally licensed firearms dealer" has the same meaning as in section 5502.63 of the Revised Code.

Sec. 4737.012. (A) Notwithstanding division (A) of section 4737.01 of the Revised Code, a dealer who is in the business of purchasing, reselling, exchanging, recycling, shredding, or receiving bulk merchandise containers shall not purchase or receive plastic bulk merchandise containers that are marked with a company name or logo, or more than nine wooden bulk merchandise containers, from any other person at one time, unless the dealer maintains a record book or electronic file in which the dealer keeps an accurate and complete record of all containers purchased or received by the dealer. Every entry in the record book or electronic file shall be numbered consecutively. Until the registry developed by the director of public safety pursuant to section 4737.045 of the Revised Code is operational, a dealer shall maintain the record for each container purchased or received for a minimum period of one year after the date the dealer purchased or received the container. Beginning on the date the registry is operational, a dealer shall maintain the record for each container purchased or received only for a period of sixty days after the date the dealer purchased or received the container. The director shall adopt rules for the format and maintenance of the records required under this division.

The records shall contain all of the following:

(1) The name and residence of the person from whom the containers were purchased or received, a copy of that person's personal identification card, and, if required, a photograph of the person taken pursuant to division (B)(2) of this section;

Am. Sub. S. B. No. 193                                       129th G.A.

8

(2) A description of the containers, including the number purchased or received and, if required, a photograph of the containers taken pursuant to division (B)(1) of this section;

(3) The date and time the dealer purchased or received the containers;

(4) If the seller or provider of the containers arrives at the dealer's place of business in a motor vehicle, the license plate number of that motor vehicle along with the state that issued the license plate.

(B) Every dealer who is in the business of reselling bulk merchandise containers shall take a photograph, in accordance with rules adopted by the director, of both of the following:

(1) Each container for which the dealer must make a record under division (A) of this section;

(2) Each person who sells or otherwise gives the dealer the containers.

The dealer shall take the required photographs at the time the dealer purchases or receives the containers and shall keep the photographs as part of the record in accordance with division (A) of this section.

(C) A dealer who is in the business of purchasing, reselling, exchanging, recycling, shredding, or receiving bulk merchandise containers shall fulfill the requirements of section 4737.041 of the Revised Code with respect to the containers purchased or received by the dealer for which the dealer must make a record under division (A) of this section. No dealer shall purchase or receive any bulk merchandise container for which the dealer must make a record under division (A) of this section without complying with division (B), (C), or (D) of section 4737.041 of the Revised Code.

(D) As used in this section, "bulk merchandise container" means a plastic or wooden carrier or holder used by a manufacturer or distributor to transport merchandise to wholesale and retail outlets.

Sec. 4737.04. (A) As used in this section and sections 4737.041, 4737.042, ~~and~~ 4737.043, 4737.044, 4737.045, and 4737.99 of the Revised Code:

(1) "Scrap metal dealer" means the owner or operator of a business that purchases or receives scrap metal for the purpose of sorting, grading, and shipping metals to third parties for direct or indirect melting into new products.

(2) "Special purchase article" means all of the following:

(a) Beer kegs;

(b) Cable, wire, electrical components, and other equipment used in providing cable service or any utility service, including, but not limited to, copper or aluminum coverings, housings, or enclosures related thereto;

(c) Grave markers, sculptures, plaques, and vases made out of metal, the

appearance of which ~~suggest~~ suggests that the articles have been obtained from a cemetery;

(d) Guard rails for bridges, highways, and roads; highway and street signs; street light poles and fixtures; ~~manhole~~ worker access hole covers, water meter covers, and other similar types of utility access covers; traffic directional and control signs and light signals, metal marked with the name of a political subdivision of the state, and other metal articles that are purchased and installed for use upon authorization of the state or any political subdivision of the state;

(e) Historical, commemorative, and memorial markers and plaques made out of metal;

(f) Four-wheel metal carts, commonly referred to as "grocery carts," that are generally used by individuals to collect and transport consumer goods while shopping;

(g) Four-wheel metal carts, commonly referred to as "metal bossies," that are used to transport or merchandise food products that are stored in crates, shells, or trays:

(h) Railroad material, including journal brasses, rail spikes, rails, tie plates, frogs, and communication wire:

(i) Metal trays, merchandise containers, or similar transport containers used by a product producer, distributor, retailer, or an agent of a product producer, distributor, or retailer as a means for the bulk transportation, storage, or carrying of retail containers of milk, baked goods, eggs, or bottled beverage products:

(j) "Burnt wire," which is any metal that has been smelted, burned, or melted.

(3) "Bulk merchandise container" has the same meaning as in section 4737.012 of the Revised Code.

(4) "Bulk merchandise container dealer" means a dealer who is subject to section 4737.012 of the Revised Code.

(5) "Common recycled matter" means bottles and other containers made out of steel, tin, or aluminum and other consumer goods that are metal that are recycled by individual consumers and not in the bulk or quantity that could be supplied or recycled by large business establishments. "Common recycled matter" does not include a metal tray used by a product producer, distributor, retailer, or agent of a product producer, distributor, or retailer as a means for the bulk transportation, storage, or carrying of retail containers of milk, baked goods, eggs, or bottled beverage products.

(4)(6) "Consumer goods" has the same meaning as in section 1309.102 of the Revised Code.

Am. Sub. S. B. No. 193                                          129th G.A.

10

(5)(7) "Recyclable materials" means the metal materials described in division (B)(C)(5) of this section, on the condition that those metal materials are not special purchase articles.

(6)(8) "Motor vehicle" has the same meaning as in section 4501.01 of the Revised Code.

(B)(1) No person shall engage in the business of scrap metal dealing or act as a bulk merchandise container dealer without first registering with the director of public safety in accordance with section 4737.045 of the Revised Code.

(2) Notwithstanding section 2913.02 of the Revised Code, no person, with purpose to deprive the owner of a special purchase article or bulk merchandise container, shall knowingly obtain or exert control over the special purchase article or bulk merchandise container in any of the following ways:

(a) Without the consent of the owner or person authorized to give consent;

(b) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(c) By deception;

(d) By threat;

(e) By intimidation.

(3) No person shall receive, purchase, or sell a special purchase article or a bulk merchandise container except as in accordance with sections 4737.012 and 4737.04 to 4737.045 of the Revised Code.

(C) Every scrap metal dealer shall maintain a record book or electronic file, in which the dealer shall keep an accurate and complete record of all articles purchased or received by the dealer in the course of the dealer's daily business. On and after the effective date of this amendment September 11, 2008, every entry in the record book or electronic file shall be numbered consecutively and, on or after the effective date of this amendment, shall be maintained for inspection in numerical order. Every Until the registry developed by the director pursuant to section 4737.045 of the Revised Code is operational, a dealer shall maintain the record for each article purchased or received for a minimum period of one year after the date the dealer purchased or received the article, except that the dealer shall maintain the photograph required under division (I) of this section only for a period of sixty days after the dealer purchased or received the article. Said Beginning on the date the registry is operational, a dealer shall maintain the record for each article purchased or received only for a period of sixty days after the date the dealer purchased or received the article. The director shall adopt

rules for the format and maintenance of the records required under this division.

The records shall contain all of the following:

(1) Name The name and residence of the person from whom said the articles were purchased or received and, a copy of that person's personal identification card, and a photograph of the person taken pursuant to division (I) of this section;

(2) The date and time the scrap metal dealer purchased or received the articles and the weight of the articles as determined by a licensed commercial scale;

(3) If the seller or provider of the articles arrives at the dealer's place of business in a motor vehicle, the license plate number of that motor vehicle along with the state that issued the license plate;

(4) For metal articles that are not recyclable materials, a full and accurate description of each article purchased or received by the dealer that includes identifying letters or marks written, inscribed, or otherwise included on the article and the name and maker of the article if known;

(5) For recyclable materials that are not special purchase articles, a scrap metal dealer shall use the following category codes to identify the recyclable materials that the dealer receives:

(a) "Number one copper," which includes clean copper pipe, clean copper wire, or other number one copper that does not have solder, paint, or coating;

(b) "Number two copper," which includes unclean copper pipe, unclean copper wire, or other number two copper;

(c) "Sheet copper," which includes copper roofing, copper gutters, copper downspouts, and other sheet copper;

(d) "Insulated copper wire";

(e) "Aluminum or copper radiators," which includes aluminum radiators, aluminum copper radiators, and copper radiators;

(f) "Red brass," which includes red brass values and other red brass;

(g) "Yellow brass," which includes yellow brass fixtures, yellow brass valve and fitting, ornamental brass, and other yellow brass;

(h) "Aluminum sheet";

(i) "Aluminum extrusions," which includes aluminum bleachers, aluminum benches, aluminum frames, aluminum pipe, and other aluminum extrusions;

(j) "Cast aluminum," which includes aluminum grills, lawnmower decks made of aluminum, aluminum motor vehicle parts and rims, and other cast aluminum;

(k) "Clean aluminum wire";

(l) "Unclean aluminum wire";

(m) "Aluminum exteriors," which includes aluminum siding, aluminum gutters and downspouts, aluminum shutters, aluminum trim, and other aluminum exterior items;

(n) "Contaminated aluminum";

(o) "Stainless steel," which includes, sinks, appliance housing, dishes, pots, pans, pipe, and other items made out of stainless steel;

(p) "Large appliances," which includes consumer and other appliances;

(q) "Steel structural," which includes all structural steel such as I-beams, trusses, channel iron, and similar steel from buildings;

(r) "Miscellaneous steel," which includes steel grates, steel farm machinery, steel industrial machinery, steel motor vehicle frames, and other items made out of steel;

(r)(s) "Sheet irons," which includes bicycles, motor vehicle body parts made of iron, and other items made using sheet iron;

(s)(t) "Motor vehicle nonbody parts," which includes motor vehicle batteries, radiators, and other nonbody motor vehicle parts;

(t)(u) "Catalytic converters";

(u)(v) "Lead";

(v)(w) "Electric motors."

(C) All journal brasses, and other railroad metals (6) For recyclable materials that are special purchase articles, the relevant category provided in division (A)(2) of this section.

(D) Railroad material, including journal brasses, rail spikes, rails, tie plates, frogs, and communication wire, other than purchases and sales under sections 4973.13 to 4973.16 of the Revised Code, shall be held by the a scrap metal dealer for a period of thirty days after being purchased or acquired.

(D)(E)(1) The records required under division (B)(C) of this section or under section 4737.012 of the Revised Code shall be open for inspection by the representative of any law enforcement agency, railroad police officers, and the director of public safety or the director's designated representative during all business hours. A scrap metal dealer or bulk merchandise container dealer shall provide do both of the following:

(a) Provide a copy of those records to any law enforcement agency or railroad police officer that requests the records or to the director or director's representative, upon request;

(b) Prepare a daily electronic report, the content and format of which shall be established in rules adopted by the director, listing all retail

transactions that occurred during the preceding day and containing the information described in division (C) of this section or division (A) of section 4737.012 of the Revised Code, as applicable. The dealer shall electronically transfer, by twelve noon eastern standard time, the report for inclusion in the registry created pursuant to division (E) of section 4737.045 of the Revised Code.

A law enforcement agency may inspect any photographic records collected and maintained by a scrap metal dealer of either yard operations or individual transactions. Records submitted to any law enforcement agency pursuant to this section are not public records for purposes of section 149.43 of the Revised Code. A

(2) A person who claims to own a stolen article that may be identified in those records, or an agent of that person, who provides proof of having filed a stolen property report with the appropriate law enforcement agency, may request those records. The law enforcement agency shall provide those records upon a request made by such a person or that person's agent, but the law enforcement agency shall redact information that reveals the name of the seller of any article and the price the dealer paid for any article the dealer purchased or the estimated value of any article the dealer received. The law enforcement agency shall determine which records to provide, based upon the time period that the alleged theft is reported to have taken place. A law enforcement agency may charge or collect a fee for providing records as required by this section.

(E)(F)(1) No scrap metal dealer shall purchase or receive any metal articles, and no bulk merchandise container dealer shall purchase or receive any bulk merchandise containers, from a person who refuses to show the dealer the person's personal identification card, or who refuses to allow the dealer to take a photograph of the person as required under division (I) of this section or of the person or container as required under division (B) of section 4737.012 of the Revised Code.

(2) The law enforcement agency that serves the jurisdiction in which a scrap metal dealer or a bulk merchandise container dealer is located shall provide to the scrap metal dealer or bulk merchandise container dealer a searchable, electronic list prepared in accordance with rules adopted by the director, as that agency determines appropriate, of the names and descriptions of persons known to be or who are suspected to be thieves or receivers of stolen property. The law enforcement agency may request the appropriate clerk of courts to provide the list. No scrap metal dealer or bulk merchandise container dealer shall purchase or receive articles from any person identified on the list the dealer receives from the law enforcement

agency. The law enforcement agency also shall provide the list to the department of public safety, in an electronic format in accordance with rules adopted by the director, for inclusion in the registry created in section 4737.045 of the Revised Code.

(3) No scrap metal dealer or bulk merchandise container dealer shall purchase or receive any special purchase articles or bulk merchandise containers from any person who is under eighteen years of age.

(4) No scrap metal dealer shall purchase or receive any special purchase article without complying with division (B)(C) or (I) of this section and division (B), (C), or (D) of section 4737.041 of the Revised Code.

(5) No scrap metal dealer shall purchase or receive more than one catalytic converter per day from the same person except from a motor vehicle dealer as defined in section 4517.01 of the Revised Code.

(6) No scrap metal dealer shall purchase or receive a beer keg that is marked with a company name or logo except from a manufacturer of beer as described in section 4303.02 of the Revised Code or an agent authorized by the manufacturer to dispose of damaged kegs.

(7) No scrap metal dealer shall treat a transaction as exempt from section 4737.04 or 4737.041 of the Revised Code unless the seller provides evidence of satisfying division (D)(3) of section 4737.043 of the Revised Code.

(F)(G) Every scrap metal dealer and bulk merchandise container dealer shall post a notice in a conspicuous place on the dealer's premises notifying persons who may wish to transact business with the dealer of the penalties applicable to any person who does any of the following:

(1) Provides a false personal identification card to the dealer;

(2) With purpose to defraud, provides any other false information to the dealer in connection with the dealer's duty to maintain the records required under division (B)(C) of this section or under section 4737.012 of the Revised Code;

(3) Violates section 2913.02 of the Revised Code or division (B)(2) of this section.

(G)(H)(1) Except as otherwise provided in the second paragraph of division (E)(F)(2) of this section, a clerk of courts or an employee of a clerk of courts; a chief of police, marshal, or other chief law enforcement officer; a sheriff, constable, or chief of police of a township police department or police district police force, and; a deputy, officer, or employee of the law enforcement agency served by the marshal or the municipal or township chief, the office of the sheriff, or the constable; and an employee of the department of public safety is immune from liability in a civil action,

Am. Sub. S. B. No. 193                                    129th G.A.

15

including an action for defamation, libel, or slander, to recover damages for injury, death, or loss to persons or property or reputation allegedly caused by an act or omission in connection with compiling and providing the list required by division (E)(F)(2) of this section.

(2) The immunity described in division (G)(H)(1) of this section does not apply to a person described in that division if, in relation to the act or omission in question, any of the following applies:

(a) The act or omission was manifestly outside the scope of the person's employment or official responsibilities.

(b) The act or omission was with malicious purpose, in bad faith, or in a wanton or reckless manner.

(c) Liability for the act or omission is expressly imposed by a section of the Revised Code.

(I) Every scrap metal dealer shall take a photograph, in accordance with rules adopted by the director, of each person who sells or otherwise gives the dealer an article for which the dealer must make record under division (C) of this section.

The dealer shall take the required photograph at the time the dealer purchases or receives the article and shall keep the photograph as part of the record in accordance with division (C) of this section.

Sec. 4737.041. A scrap metal dealer or bulk merchandise container dealer shall do all of the following with respect to each special purchase article the scrap metal dealer purchases or receives or with respect to each bulk merchandise container a bulk merchandise container dealer purchases or receives that is subject to division (A) of section 4737.012 of the Revised Code:

(A) Comply with the requirements of this section in addition to complying with the applicable requirements of section 4737.012 or 4737.04 of the Revised Code;

(B) Take a photograph of each special purchase article or bulk merchandise container;

(C) Obtain from the seller or provider of the special purchase article or bulk merchandise container proof that the seller or provider owns the special purchase article or bulk merchandise container;

(D) If payment is rendered for the special purchase articles or bulk merchandise containers, issue a check for the purchase of the special purchase articles or bulk merchandise containers;

(E) Withhold payment for the purchase of the special purchase articles or bulk merchandise containers for a period of two days after the day the special purchase articles or bulk merchandise containers are purchased;

Am. Sub. S. B. No. 193                                    129th G.A.

16

(F) If an asserted owner of stolen special purchase articles or bulk merchandise containers or that owner's agent provides proof of having filed a stolen property report with the appropriate law enforcement agency, make records describing special purchase articles or bulk merchandise containers the scrap-metal dealer purchased or received after the alleged date of theft available for inspection to the asserted owner or owner's agent for a period of six months after the alleged date of theft of the articles, except that the scrap-metal dealer shall withhold the name of the person from whom the special purchase articles or bulk merchandise containers were purchased or received and the amount paid for the special purchase articles or bulk merchandise containers.

Sec. 4737.045. (A) To register as a scrap metal dealer or a bulk merchandise container dealer with the director of public safety as required by division (B) of section 4737.04 of the Revised Code, a person shall do all of the following:

(1) Provide the name and street address of the dealer's place of business;

(2) Provide the name of the primary owner of the business, and of the manager of the business, if the manager is not the primary owner;

(3) Provide the electronic mail address of the business;

(4) Provide confirmation that the dealer has the capabilities to electronically connect with the department of public safety for the purpose of sending and receiving information;

(5) Provide any other information required by the director in rules the director adopts pursuant to sections 4737.01 to 4737.045 of the Revised Code;

(6) Pay an initial registration fee of two hundred dollars.

(B) A person engaging in the business of a scrap metal dealer or a bulk merchandise container dealer in this state on or before the effective date of this section shall register with the director not later than January 1, 2013. With respect to a person who commences engaging in the business of a scrap metal dealer or a bulk merchandise container dealer after the effective date of this section, the person shall register with the director pursuant to this section prior to commencing business as a scrap metal dealer or a bulk merchandise container dealer.

(C) A registration issued to a scrap metal dealer or a bulk merchandise container dealer pursuant to this section is valid for a period of one year. A dealer shall renew the registration in accordance with the rules adopted by the director and pay a renewal fee of one hundred fifty dollars to cover the costs of operating and maintaining the registry created pursuant to division (E) of this section.

Am. Sub. S. B. No. 193                                      129th G.A.

17

(D) A scrap metal dealer or a bulk merchandise container dealer registered under this section shall prominently display a copy of the annual registration certificate received from the director pursuant to division (E)(2) of this section.

(E) The director shall do all of the following:

(1) Develop and implement, by January 1, 2014, and maintain as a registry a secure database for use by law enforcement agencies that is capable of all of the following:

(a) Receiving and securely storing all of the information required by division (A) of this section and the daily transaction data that scrap metal dealers and bulk merchandise dealers are required to send pursuant to division (E)(1) of section 4737.04 of the Revised Code;

(b) Providing secure search capabilities to law enforcement agencies for enforcement purposes;

(c) Creating a link and retransmission capability for receipt of routine scrap theft alerts published by the institute of scrap recycling industries for transmission to dealers and law enforcement agencies in the state;

(d) Making the electronic lists prepared pursuant to division (F)(2) of section 4737.04 of the Revised Code available through an electronic searchable format for individual law enforcement agencies and for dealers in the state;

(e) Providing, without charge, interlink programming enabling the transfer of information to dealers.

(2) Issue, reissue, or deny registration to dealers;

(3) Adopt rules to enforce sections 4737.01 to 4737.045 of the Revised Code, rules establishing procedures to renew a registration issued under this section, rules for the format and maintenance for the records required under division (A) of section 4737.012 of the Revised Code or division (C) of section 4737.04 of the Revised Code, and rules regarding the delivery of the report required by division (E)(1) of section 4737.04 of the Revised Code to the registry, which shall be used exclusively by law enforcement agencies.

(F) A scrap metal dealer or bulk merchandise container dealer may search, modify, or update only the dealer's own business data contained within the registry established in division (E) of this section.

(G) All fees received by the director pursuant to this section and division (F) of section 4737.99 of the Revised Code shall be used to develop and maintain the registry required under this section. The fees shall be deposited into the security, investigations, and policing fund created in section 4501.11 of the Revised Code.

Sec. 4737.99. (A) Except as specified in divisions (B) and, (C), (D), (E),

Am. Sub. S. B. No. 193                                129th G.A.

18

and (F) of this section, whoever violates sections 4737.01 to 4737.11 of the Revised Code, shall be fined not less than twenty-five nor more than one thousand dollars and the costs of prosecution.

(B) Whoever violates division (F)(2) of section 4737.10 of the Revised Code is guilty of a misdemeanor of the fourth degree.

(C) Whoever fails to comply with or violates section 4737.01, 4737.012, or 4737.041 or, division (B), (C), (D), (E), or (F), (G), or (I) of section 4737.04, or division (D) of section 4737.045 of the Revised Code is guilty of a misdemeanor of the third first degree. If the offender one time previously has violated or failed to comply with section 4737.01, 4737.012, or 4737.041 or, division (B), (C), (D), (E), or (F), (G), or (I) of section 4737.04, or division (D) of section 4737.045 of the Revised Code, the violation or failure is a misdemeanor felony of the second fifth degree. If the offender two or more times previously has violated or failed to comply with section 4737.01, 4737.012, or 4737.041 or, division (B), (C), (D), (E), or (F), (G), or (I) of section 4737.04, or division (D) of section 4737.045 of the Revised Code, the violation or failure is a misdemeanor felony of the first fourth degree. For any second or subsequent violation of or failure to comply with section 4737.01, 4737.012, or 4737.041, or division (C), (D), (E), (F), (G), or (I) of section 4737.04, or division (D) of section 4737.045 of the Revised Code, a court may suspend the registration issued to the scrap metal dealer or bulk merchandise container dealer under section 4737.045 of the Revised Code for a period of ninety days, during which time period the person shall not engage in the business of a scrap metal dealer or a bulk merchandise container dealer, as applicable.

(D) Whoever violates division (B)(1) of section 4737.04 of the Revised Code is guilty of a felony of the fifth degree. The court also shall enjoin the person from engaging in the business of a scrap metal dealer or a bulk merchandise dealer.

(E) Notwithstanding section 2913.02 of the Revised Code, whoever violates division (B)(2) or (3) of section 4737.04 of the Revised Code is guilty of a felony of the fifth degree for the first offense and a felony of the third degree for any subsequent offense.

(F) Any motor vehicle used in the theft or illegal transportation of metal shall be impounded for at least thirty days and not more than sixty days. If the same motor vehicle is used in connection with a second or subsequent theft or illegal transportation of metal, the motor vehicle shall be impounded for at least sixty days and not more than one hundred eighty days. Any motor vehicle used in the theft or illegal transportation of a special purchase article or bulk merchandise container shall be impounded for at least ninety

Am. Sub. S. B. No. 193                                    129th G.A.

19

days and not more than three hundred sixty days. A motor vehicle impounded pursuant to this division shall be stored at a municipal corporation impound lot, if available, or at a lot owned by a private entity or another governmental unit that the municipal corporation utilizes for the purpose of impounding a motor vehicle. An impounded motor vehicle may be recovered from the impound lot at the end of the impound term upon payment of fees, fifty per cent of which shall be remitted to the department of public safety to offset the costs of operating the registry established pursuant to section 4737.045 of the Revised Code.

SECTION 2. That existing sections 2913.01, 4737.04, 4737.041, and 4737.99 of the Revised Code are hereby repealed.

SECTION 3. Division (B)(1) of section 4737.04 of the Revised Code, as amended by this act, shall take effect on January 1, 2013.

SECTION 4. In order to cover the costs of the creation and initial implementation of the database described in division (E) of section 4737.045 of the Revised Code, as enacted by this act, the Director of Public Safety may accept funds from public donors for that purpose. The Director shall deposit any funds received pursuant to this section into the Security, Investigations, and Policing Fund created in section 4501.11 of the Revised Code.

SECTION 5. During the first year of the 134th General Assembly, the President of the Senate or Speaker of the House of Representatives shall initiate creation of a joint select committee of the Senate and House of Representatives for the purpose of considering the effectiveness of this act in deterring crime and the costs of complying with this act to industries affected by this act. The President of the Senate and Speaker of the House of Representatives shall create the joint select committee in accordance with the Joint Rules of the Senate and House of Representatives for the 134th General Assembly for creation of a joint select committee.

The joint select committee shall hold public hearings at which time representatives of the Ohio Municipal League, the Ohio Prosecuting Attorneys Association, and the Ohio Sheriff's Association; representatives of the scrap metal recycling industry; and other interested parties may present testimony on the affect of this act on metals theft rates, theft

Am. Sub. S. B. No. 193                                129th G.A.

20

deterrence, criminal enforcement and prosecution, and economic and administrative burdens on industry. The joint select committee shall provide advance notice of its hearings to, and shall solicit comments in advance of those hearings from, the Ohio Municipal League, Ohio Prosecuting Attorneys Association, Ohio Sheriff's Association, representatives of the scrap metal recycling industry, and other interested parties that the joint select committee determines should receive notice.

The joint select committee shall issue a report summarizing the effectiveness and impacts of this act and submit the report to the President of the Senate and Speaker of the House of Representatives. The Legislative Service Commission shall assist the joint select committee in preparing and finalizing the report required by this section.

SECTION 6. There is hereby created the Scrap Metal and Bulk Merchandise Container Registry Advisory Council. The Director of Public Safety shall appoint the members of the Council, who shall represent the scrap metal recycling industry, businesses that provide software to the scrap metal recycling industry, law enforcement, and other interests as the Director determines necessary. The Council shall provide guidance and assistance to the Director in the development and implementation of the registry required under section 4737.045 of the Revised Code, as enacted by this act. The Department of Public Safety shall provide assistance to the Council as the Director determines necessary. Members shall serve without compensation or reimbursement. The Council shall be abolished January 1, 2014.

Am. Sub. S. B. No. 193                                                    129th G.A.


*Speaker* _____ *of the House of Representatives.*


*President* _____ *of the Senate.*


Passed _____, 20____


Approved _____, 20____


                                                                                    *Governor.*

Am. Sub. S. B. No. 193

129th G.A.

The section numbering of law of a general and permanent nature is complete and in conformity with the Revised Code.

_____

*Director, Legislative Service Commission.*

Filed in the office of the Secretary of State at Columbus, Ohio, on the _____ day of _____, A. D. 20____.

_____

*Secretary of State.*

File No. _____    Effective Date _____